**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis Alberto ALVAREZ–SANCHEZ,
Guillermo Leon Ruiz-Azendano,
Defendants-Appellants.**

No. 83–5612.

United States Court of Appeals,
Eleventh Circuit.

Oct. 25, 1985.

Irwin G. Lichter, Yolanda Morales and Theodore R. Dempster, Miami, Fla., for defendants-appellants.

Stanley Marcus, U.S. Atty., Linda Collins-Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and THOMAS *, District Judge.

KRAVITCH, Circuit Judge:

Appellants Ruiz-Azendano (Ruiz) and Alvarez-Sanchez (Alvarez) both were convicted of possession of cocaine with intent to distribute.[1] 21 U.S.C. § 841(a)(1). In this appeal, Ruiz seeks reversal of his conviction, claiming that the evidence is insufficient to sustain the jury's verdict. Alvarez contends that the district court improperly denied his motion to suppress evidence that he argues was tainted by his unlawful seizure. We affirm.

## I. BACKGROUND

On April 5, 1984, shortly before 11:00 p.m., United States Border Patrol Agents Stephen Lotakas and Donald Harty entered the Miami Greyhound Bus Terminal to look for illegal aliens. During the previous year, Lotakas had checked the terminal for illegal aliens numerous times, making approximately sixty arrests.[2] When the agents entered the station, they looked over the seating area and saw approximately forty people. Agent Lotakas soon focused upon appellant Ruiz, who appeared to be Hispanic. The other seats in the row of chairs where Ruiz sat were empty; the closest person to him was approximately ten feet away. On the floor to Ruiz' right and within his arm's reach was a yellow plastic shopping bag. After observing Ruiz and others in the bus terminal for approximately fifteen minutes, the two agents approached a man sitting in the row of chairs behind Ruiz, and questioned him about his immigration status. Satisfied that this man was lawfully in the country, the agents approached Ruiz. As they did, Ruiz left his chair and began to walk past the two agents. Lotakas stepped in front of Ruiz, identified himself as an immigration officer, and asked Ruiz his citizenship. Ruiz responded that he was married. When Lotakas repeated the question, Ruiz told Lotakas to call his wife who was in Tampa. Lotakas asked Ruiz the same question again; this time Ruiz replied that he was a Colombian and that his wife had his passport as she was making arrangements for his immigration papers. Lotakas placed Ruiz under administrative arrest for lack of travel documents and told him to pick up his bag. Ruiz responded that the yellow shopping bag was not his. Lotakas picked up the bag and escorted Ruiz to an administrative office in the bus station where the two agents further questioned him about his citizenship. Inside the bag, the agents found men's clothing and grooming articles, and a teddy bear.

While questioning Ruiz, Harty noticed another Hispanic male, appellant Alvarez, sit down in a chair directly in front of the office. The agents had not noticed Alvarez in the station when they first entered; apparently he had arrived shortly thereafter. Harty walked back into the terminal area and approached Alvarez with his badge in hand. At first, Harty spoke to him in English; when Alvarez did not respond, Harty questioned him in Spanish about his nationality. Alvarez said he was from Co-

---

\* Honorable Daniel H. Thomas, U.S. District Judge, Southern District of Alabama, sitting by designation.

1. Although the appellants were named in the same indictment, Alvarez' motion to sever for separate trial was granted. Ultimately, the cases against the two appellants were presented in the same proceeding, with the determination of Ruiz' guilt being left to a jury, and the determination of Alvarez' guilt being the trial judge's responsibility.

2. Agent Lotakas testified that the 11:00 p.m. bus to New York was particularly popular with illegal aliens.

lombia. Harty then asked him if he had any immigration documents. Alvarez began to unzip a side compartment on his luggage, but Harty stopped him and requested that he step inside the office, which was approximately fifteen feet away. Alvarez agreed and carried the bag to the office where Lotakas was questioning Ruiz. Inside the office and without any direction from the agents, Alvarez again unzipped his suitcase and produced his documents. Observing that Alvarez' travel visa had been expired for approximately five months, Harty placed him under administrative arrest.

At that point, Harty asked Alvarez what else was in the suitcase. Alvarez responded that he had some dirty clothes and began emptying the suitcase; after he removed a portion of the contents he began returning them to the suitcase. Harty took the suitcase from Alvarez and emptied it himself, finding two spherically shaped packages wrapped in tape with the letters RR written in magic marker on the wrapping.

The agents decided to take the two men to Border Patrol Headquarters in Miami for processing. There they discovered that each of the packages found in Alvarez' suitcase contained a kilogram of cocaine; approximately four kilograms of cocaine were stuffed inside the teddy bear found in the yellow shopping bag. The cocaine was packaged similarly.[3] Both appellants possessed bus tickets to New York City, and Ruiz had no baggage claim attached to his ticket or on his person.

## II. WHETHER THE EVIDENCE WAS SUFFICIENT TO CONVICT APPELLANT RUIZ

■ Appellant Ruiz contends that the government did not introduce sufficient evidence to convict him of the substantive offense of possession with intent to distrib-

ute cocaine. In reviewing this claim, we must examine the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the government, *United States v. Monaco*, 702 F.2d 860, 880 (11th Cir.1983), and affirm the conviction if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (Unit B en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[4] The evidence may be sufficient though it does not "exclude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion except that of guilty.... A jury is free to choose among reasonable constructions of the evidence." *Id.* Possession of a controlled substance with intent to distribute may be proved by circumstantial evidence as well as by direct evidence. *United States v. Pruitt*, 763 F.2d 1256, 1264 (11th Cir.1985).

■ Appellant Ruiz specifically contends that the government failed to establish any connection between himself and the cocaine found in the yellow shopping bag. We disagree. Although the proximity of the bag to Ruiz, in and of itself, would not be sufficient for the jury to have concluded beyond a reasonable doubt, it is a factor to be considered with other evidence presented. The agents did not see Ruiz enter the bus station or hold the shopping bag, but they did observe him for approximately fifteen minutes before they approached him. During that time, the bag remained on the floor close to Ruiz, within his reach, and no one else made any attempt to exercise ownership over the bag. Nor was anyone else sitting in the same row or within ten feet of him. It is true that the government made no attempt to introduce fingerprint evidence or other evidence of identification. The bag, however, did con-

---

**3.** These packages were shaped similarly, consisted of the same wrapping material, and the letters XX were written in magic marker on the packages.

**4.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

tain men's clothing and grooming articles, in addition to the teddy bear, and as the court below admitted the bag and its contents into evidence, the jury had the opportunity to consider whether the clothes might have fit Ruiz. Moreover, Ruiz possessed a bus ticket to New York City, but had neither a baggage claim nor other luggage. In addition, the fact that the bag contained four kilograms of cocaine, a not insignificant amount, would discount the possibility of the bag having been abandoned by another passenger, especially as the INS agents were in plain clothes. Although it is a close question, considering the totality of the circumstances and drawing all reasonable inferences in favor of the government, we conclude that the jury could have determined beyond a reasonable doubt that the bag belonged to Ruiz, and that he knowingly possessed the cocaine.

III. WHETHER THE ENCOUNTER BETWEEN ALVAREZ AND THE AGENTS AMOUNTED TO AN ILLEGAL SEIZURE

In the court below, Alvarez filed a motion to suppress the cocaine found inside his luggage, arguing that he was seized without reasonable suspicion at the time he was taken to the terminal office, thereby tainting the subsequent search of his bag and discovery of the cocaine.[5] In denying the motion to suppress, the district court found that the agents acted reasonably, under the circumstances, in conducting their investigation in the terminal office and that there was no coercion in requesting that Alvarez enter the office for examination of his documents. Alvarez seeks review of the denial of the motion to suppress. The government counters that Alvarez was not seized until Harty actually placed him under administrative arrest.

Not every encounter between law enforcement officers and an individual constitutes a seizure within the meaning of the fourth amendment. *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). Communications between po-

lice and citizens involving no coercion or detention are outside the scope of the fourth amendment. *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. Unit B 1982) (*en banc*). An initially consensual encounter, however, can ripen into a detention requiring reasonable suspicion or probable cause. *Delgado*, 104 S.Ct. at 1762. If an officer, by means of physical force or show of authority, has restrained the liberty of a citizen, we must conclude that a seizure requiring an objective level of justification has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The crucial inquiry in determining whether a person has been seized within the meaning of the fourth amendment is whether, considering all the circumstances, "a reasonable person would have believed that he was not free to leave" if he failed to respond to the questions. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); *see Delgado*, 104 S.Ct. at 1763; *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (plurality opinion).

In *Delgado*, the Supreme Court held that the questioning of individual employees during a "factory survey" conducted by the Immigration and Naturalization Service (INS), involved nothing more than brief consensual encounters rather than fourth amendment seizures. The survey consisted of INS agents walking throughout the factory questioning employees about their citizenship and right to work in the United States. When they were not being questioned, employees continued with their work, free to walk around the factory. Although INS agents were stationed at the doors of the workplace, no employees were told they could not leave and no force or coercion was used in the questioning. 104 S.Ct. at 1764–65. This court applied *Delgado*'s rationale in holding that the questioning of a Hispanic man by two INS agents in a Miami shopping mall, and the agents' request that the man and his companion

---

5. Alvarez does not challenge the validity of the     search on any other ground.

accompany them to a nearby bench, was no more than a consensual police-citizen encounter not requiring any suspicion of unlawful activity. *United States v. Rodriguez-Franco,* 749 F.2d 1555, 1560 (11th Cir. 1985).

■■■ In the present case, we have no trouble concluding that Harty did not seize Alvarez by approaching him in the bus station, and questioning him about his citizenship. Indeed, INS agents have statutory authority to question persons believed to be aliens about their right to be in or remain in the United States. 8 U.S.C. § 1357(a)(1). Authority under this statute is constrained by the fourth amendment, but the mere fact that Harty identified himself as an INS agent did not transform this encounter into a seizure requiring some level of objective justification. *Florida v. Royer,* 103 S.Ct. at 1325. There was no evidence that Harty used any force or coercion in this initial encounter; indeed Alvarez voluntarily began to produce his immigration papers in response to Harty's initial questioning.

More troubling is Harty's request that Alvarez accompany him to the nearby administrative office. In *United States v. Berry,* this court observed that when government officials in search of narcotics traffickers approach a citizen in an airport, only "exceptionally clear evidence of consent should overcome a presumption that a person requested to accompany an agent to an office no longer would feel free to leave." 670 F.2d at 598. We assume for purposes of this case that this presumption of coercion is applicable to questioning about an individual's immigration status. Nevertheless, the court below found that Alvarez' decision to accompany Harty was not the product of coercion, a finding we must sustain unless we deem it to be clearly erroneous. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States*

*v. Robinson,* 690 F.2d 869, 874 (11th Cir. 1982).

■■ Considering the totality of the circumstances surrounding this encounter, we conclude that the district court's finding on this matter is not clearly erroneous. The record indicates that appellant affirmatively responded when Harty requested that he step into the administrative office, which was only fifteen feet from where Alvarez sat. Immediately upon entering the office, appellant, without any direction, unzipped the bag and produced his passport for the agent's inspection, and during this time Harty never affirmatively stated that he believed Alvarez was engaging in any illegal activity. *Cf. United States v. Robinson,* 690 F.2d 869, 875–76 (11th Cir.1982). Nor had Alvarez at that point engaged in any observable conduct that he might have believed would have made Harty suspect that he was involved in illegal activity. *Cf. United States v. Berry,* 670 F.2d 583, 604 (5th Cir. Unit B 1982) (*en banc*)(appellants who knew that DEA agents were aware they had falsely identified themselves, and who were asked whether they were smuggling drugs, "could not be held voluntarily to have consented to go to the office."). Moreover, appellant also retained control of his luggage and bus ticket from the time of the initial encounter until after his arrest. *Cf. United States v. Waksal,* 709 F.2d 653, 660–61 (11th Cir.1983) (noting that police retention of documents necessary for a traveler to continue a journey is "highly material" in analyzing the coerciveness of police conduct). Finally, Harty's actions indicate that the entire encounter was conducted in an uncoerced manner.[6]

On the other hand, appellant notes that he was never told that he was not required to accompany Harty. In addition, appellant argues that he was taken to a room in which another agent sat with Ruiz, who was handcuffed, with a uniformed police

---

**6.** Appellant contends that contrary to the district court's findings, Harty grabbed him by the arm and led him into the office. Based upon the testimony of Harty, however, the district court rejected this contention, and we cannot

say that it was clearly erroneous, credibility determinations being for the trier of fact. *United States v. Suggs,* 755 F.2d 1538, 1542 (11th Cir.1985).

officer standing just outside the room.[7] While these factors are not irrelevant, they also are not decisive in this instance, and we do not believe that they render the district court's finding clearly erroneous.[8] We hold therefore that the encounter between Alvarez and the agents was consensual, until Harty actually placed Alvarez under administrative arrest, at which point there was probable cause to believe Alvarez was an illegal alien. Hence, the motion to suppress was properly denied.

Accordingly, the convictions are AFFIRMED.

---

**7.** It is not clear from the record just where the uniformed police officer stood. Nothing indicates, however, that he assisted the Border Patrol agents with their inquiry.

**8.** Citing *United States v. Patino,* 649 F.2d 724 (9th Cir.1981), appellant suggests as an additional factor going to whether the encounter was in fact coercive, the fact that he did not under-

stand English well. We agree that this could be a factor relevant to the question of whether or not an individual felt he was free to leave. In the present case, however, we note that Harty conversed with Alvarez in Spanish, and Alvarez does not contend that he could not understand Harty's questions.