[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11459
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 23, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00103-CR-J-32-MMH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO JEROME BENTLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 23, 2005)

Before DUBINA, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Mario Jerome Bentley appeals his conviction and 180-month

sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e). On appeal, Bentley argues that the district court erred by denying his motion to suppress evidence, *i.e.*, a firearm found on his person. Bentley claims that the magistrate judge's credibility determinations were erroneous. He also contends that the arresting officer exceeded the duration and the scope of a constitutional traffic stop. Bentley claims that he did not consent to the search of his person, and even if he gave equivocal and ambiguous consent, it was later withdrawn. Bentley argues that Officer Edwards did not have a reasonable suspicion that a crime had been committed or was about to be committed when he ended the traffic stop. Finally, Bentley asserts that his drug offenses committed on October 5, 1999, and October 23, 1999, constituted one, and not two, offenses, and therefore, he did not qualify for a mandatory minimum 15-year sentence under 18 U.S.C. § 924(e).

## I.

We review a district court's denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error and its application of law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). "When considering a ruling on a motion to suppress, all facts are construed in a light most favorable to the successful party." *United States*

*v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994).

## A. Credibility findings

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We have held that a "trial judge's choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." *Id.* (internal citations and punctuation omitted) (emphasis in the original).

After reviewing the record, we conclude that the magistrate judge did not err by generally crediting the testimony of Sergeant Daniel Janson and the arresting officer, Matthew Edwards, over the testimony of Tyrone Griffin, the driver of the car in which Bentley was a passenger. The record reveals that Edwards's and Janson's testimony conflicted as to the timing of certain events, such as when the initial traffic stop occurred, when the citations were issued, and when the sergeant arrived at the scene. However, these inconsistencies were minor and the specific times at which the events occurred, except for the duration of the traffic stop, were not relevant. With regard to the duration of the traffic stop, all three witnesses were generally consistent. Griffin's testimony was in conflict with Edwards's and

3

Janson's testimony in some material aspects: (1) the extent of the conversation Edwards had with Bentley upon seeing him in the passenger seat, *i.e.*, Bentley told Edwards that he had been recently released from prison; (2) whether Bentley was read his rights; and (3) whether Edwards asked for consent to the search and whether Bentley agreed to the search. More importantly, Griffin's testimony was inconsistent and evasive. First, Griffin changed his testimony with regard to whether he told Edwards that Bentley may have put something illegal in the car and that Bentley was a drug dealer. Second, Griffin testified that his memory of the incident was "messed up" and "sometimes good sometimes bad," and that he was stressed. Third, Griffin testified that he had been threatened by Bentley's friend regarding his testimony but was not able to provide any useful description of the man. Thus, the record supports the magistrate judge's credibility findings.

**B. Continued Detention and Consent to the Search**

An officer's investigation of a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). In addition, the traffic stop must be of a limited duration and "may not last any longer than necessary to process the traffic violation." *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (internal quotation and citation omitted).

4

However, an officer may continue the detention of the occupants of the vehicle after the citations have been issued when the encounter has become consensual. *Id.* at 1106 n.3. An encounter between law enforcement and an individual is considered consensual when there is no coercion and the liberty of the citizen is not restrained by a show of authority or physical force. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991). Merely asking an individual questions after the conclusion of a traffic stop does not amount to a seizure. *See id.* "The crucial inquiry in determining whether a person has been seized within the meaning of the fourth amendment is whether, considering all the circumstances, a reasonable person would have believed that he was not free to leave if he failed to respond to the questions." *United States v. Alvarez-Sanchez*, 774 F.2d 1036, 1040 (11th Cir. 1985) (internal quotation and citation omitted).

"'[V]oluntariness is a question of fact to be determined from all the circumstances' when evaluating the validity of a consent to search." *United States v. Garcia*, 890 F.2d 355, 358 (11th Cir. 1989) (citations omitted). "Thus, because in the ordinary case a finding of voluntariness is based on credibility choices, we will not overturn the trial judge's finding that defendant's consent was voluntary, unless it is clearly erroneous." *Id.* at 359.

"The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures by law enforcement authorities of the United States government." *Id.* at 360. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Id.* (internal quotations omitted). "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *Id.* "The government bears the burden of proving the voluntariness of the consent." *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984).

"In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *Garcia*, 890 F.2d at 360. "[I]n determining whether [a defendant's] consent was voluntary, we must scrutinize the facts, and strike a balance between [the defendant's] right to be free from coercive conduct and the legitimate need of the government to conduct lawful searches." *Id.*

> "Relevant factors in determining voluntariness, none of which is dispositive, include voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no

6

incriminating evidence will be found."

*Chemaly*, 741 F.2d at 1352. However, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973). Similarly, the Fourth Amendment does not always require law enforcement officers to "inform detainees that they are free to go before a consent to search may be deemed voluntary." *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996).

First, crediting the officers' version of the facts (*see* section A), the record demonstrates that the continued detention of Bentley was a result of a consensual conversation. At the time Officer Edwards issued the citations to Griffin and asked him whether he had anything illegal in his car, Bentley initiated a conversation with Sergeant Janson and stated that he was working with vice or narcotics. However, there is no indication in the record that when Edwards gave Griffin the citations they were not free to leave. When Edwards approached the passenger side of the vehicle and asked Bentley to step out, Bentley voluntarily complied. Then, Edwards asked Bentley if he had any weapons or drugs on him, and Bentley stated that he did not. The record indicates that Edwards did not

draw his service weapon, nor made any threats or promises to Bentley at any time, nor exerted authority over him. Thus, up to this point, the encounter between the officers and Bentley was consensual.

Second, the record reveals that Bentley unambiguously consented to the search of his person. To Edwards's question whether he could search him, Bentley gave an answer "along the lines of go ahead." Even though Edwards did not remember the specific language, Sergeant Janson also testified that they obtained consent to search Bentley. Moreover, there is nothing in the record indicating that Officer Edwards suggested that Bentley had no choice but to consent to the search, used any coercive procedures, or made threats or promises when asking for Bentley's consent. On the other hand, the officers did not advise Bentley that he was free to leave or had a right to refuse the search. However, Bentley's knowledge of the right to refuse consent is only one factor to be taken into account; the government need not establish such knowledge as the *sine qua non* of an effective consent. Thus, the government was not required to prove that the suspect was aware of the right to refuse to consent. Similarly, the Fourth Amendment does not always require law enforcement officers to inform detainees that they are free to leave before voluntary consent to search may be deemed established. *See Robinette*, 519 U.S. at 40, 117 S. Ct. at 421. Moreover, the

8

record indicates that Bentley had numerous encounters with law enforcement and on many occasions consented to pat-down searches. These facts tend to show that Bentley was familiar with the criminal justice system and most likely was aware of his right to refuse consent to the search. However, the record shows that Bentley knew that Edwards would find a gun if he conducted a pat-down search, and Bentley tried to block Edwards's hand reaching towards his waistband. Griffin also testified that Bentley asked him to pull over into a dark alley so he could run away. Even though this factor militates against the finding of voluntary consent to the search, it is not dispositive, and the totality of the circumstances tend to show that Bentley's consent to the search was voluntary.

### C. Reasonable Suspicion

An officer may continue to detain a vehicle's occupants after a traffic stop has concluded if the officer has "articulable suspicion of other illegal activity." *Boyce*, 351 F.3d at 1106 (internal citation and quotation omitted). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is "'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (citation omitted). When determining whether reasonable suspicion exists, the courts must review the

9

"totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (citation omitted). In addition, "a reviewing court must give due weight to the officer's experience" when examining the totality of the circumstances. *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). "None of the suspect's actions, [however], need be criminal on their face." *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995). The rule is not concerned with "hard certainties, but with probabilities" and, thus, law enforcement officials may rely on "common sense conclusions." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981).

A defendant standing at night with his co-defendants, within ten feet of a parked car, surrounded by largely abandoned buildings, in an area notorious for violent crime and drug trafficking could be factors taken into consideration under the totality of the circumstances test, although not sufficient in themselves. *See United States v. Gordon*, 231 F.3d 750, 755-56 (11th Cir. 2000). Criminal history *alone* is insufficient to give rise to the necessary reasonable suspicion. *See United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *See Gordon*, 231 F.3d

10

at 756; *but see Brent v. Ashley*, 247 F.3d 1294, 1304 (11th Cir. 2001) (noting that nervousness *alone* cannot give rise to reasonable suspicion) (emphasis added).

An officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons. *United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002).

> "An officer may conduct a frisk or pat down of an individual in order to conduct a limited search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Terry*, 392 U.S. at 27, 88 S. Ct at 1883.

After reviewing the record, we conclude that the district court did not err by concluding that Officer Edwards had reasonable suspicion to seize and conduct a frisk search of Bentley. As Edwards continued searching Bentley after obtaining consent, Bentley suddenly moved his right hand towards his waistband. Edwards perceived this movement as aggressive and seized Bentley by grabbing and holding his hand behind his back. The record reveals that at that time Edwards knew the following information. First, the traffic stop occurred at approximately 3:45 a.m. in an area that had pockets of high drug activity, where Edwards had

11

previously made numerous drug arrests. Second, Bentley had an extensive criminal history and was recently released from prison after serving a sentence for selling drugs. Third, Bentley appeared to be very nervous and his behavior was very different than his usual behavior during these type of encounters. Fourth, Bentley had consented to many previous pat down searches. Fifth, Edwards had previously found Bentley twice in the vicinity of drugs. Sixth, Griffin told Edwards that Bentley was a drug dealer than that he might have put something illegal in the car, even though the car search did not reveal any contraband. Seventh, despite consenting to the search, Bentley reached to his waistband so Edwards could not reach it, Edwards believed that Bentley's hand movement was an aggressive move jeopardizing his safety, and that Bentley was attempting to hide something that could hurt him. Finally, Edwards knew that drug dealers sometimes carried guns and that people in the area were carrying weapons in order to protect themselves from a specific individual, Lockhart. These facts were objective and constituted more than a hunch of criminal activity. The totality of the circumstances reveals that Edwards had a reasonable suspicion that Bentley was dangerous and was involved in criminal activity, so the pat-down search was justified.

**II.**

12

Finally, Bentley contends that the district court erred in finding that two of the three crimes that formed the requisite for a mandatory 15-year sentence were separate offenses within the meaning of 18 U.S.C. § 924(e). Title 18 U.S.C. § 924(e) provides mandatory penalties, *i.e.*, at least 15 years of imprisonment, for any person convicted under 18 U.S.C. § 922(g), who has "three previous convictions . . . for . . . a serious drug offense . . . committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1).

We review *de novo* the district court's determination of whether two crimes were "committed on occasions different from one another" for the purposes of 18 U.S.C. § 924(e). *United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir. 2000).

So long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of 18 U.S.C. § 924(e). *See United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998). Successive crimes are "separated by a meaningful opportunity to desist activity before committing the second offense." *See Lee*, 208 F.3d at 1307 (internal quotation omitted). The fact that offenses are consolidated for conviction and sentencing, however, does not render them the same offense for purposes of 18 U.S.C. § 924(e). *See United States v. Jackson*, 57 F.3d 1012, 1018 (11th Cir. 1995).

We conclude from the record that the district court did not err by finding

13

that Bentley committed two separate drug offenses for purposes of 18 U.S.C. § 924(e). Bentley's offenses were committed 18 days apart, thus, Bentley had the time to desist his criminal activity. Second, the fact that Bentley's offenses were consolidated for conviction and sentencing did not render them the same offense for purposes of 18 U.S.C. § 924(e). For the foregoing reasons, we affirm Bentley's conviction and sentence.

**AFFIRMED.**