[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 09 2008
THOMAS K. KAHN
CLERK

No. 07-10257
Non-Argument Calendar
_____

D. C. Docket No. 06-00101-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORTAYVIUS LESURE,
HALEIFU GOLDSMITH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(January 9, 2008)**

Before ANDERSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After a jury trial, Ortayvius Lesure appeals his conviction for possession of

multiple firearms and ammunition by a convicted felon, a violation of 18 U.S.C.

§§ 922(g)(1) and (2), and Haleifu Goldsmith appeals his conviction for aiding and abetting the foregoing offense, a violation of 18 U.S.C. §§ 922(g)(1) and 2.[1] On appeal, the defendants challenge the sufficiency of the evidence to support their convictions. More specifically, Lesure asserts that the government proved only that he was in the "mere vicinity" of the firearms seized by law enforcement when he was arrested, but not that he was in possession of those firearms. Goldsmith contends that the evidence was insufficient to convict him of aiding and abetting the crime of being a felon in possession of a firearm, because the government failed to prove that Goldsmith knew that Lesure, the principal, was a convicted felon. Goldsmith also asserts, for the first time on appeal, that the district court erred by instructing the jury on aiding and abetting a § 922(g) offense, because the instruction did not explain that the government was required to prove that he, as the aider and abettor, had to know of the principal's status as a convicted felon. After careful review, we affirm.

I.

---

[1] Lesure has abandoned any sufficiency challenge to his conviction for aiding and abetting by failing to sufficiently develop an argument on that basis in his brief. Cf. United States v. Jernigan, 341 F.3d 1273, 1284, n.8 (11th Cir. 2003) (concluding that an appellant abandoned a Fed.R.Evid. 404(b) argument on appeal where his brief contained "only four passing references to the evidence admitted under Fed.R.Evid. 404(b), each of which [was] embedded under different topical headings"). For the same reason, Goldsmith has abandoned any such challenge to his conviction for possession of a firearm by a convicted felon.

The relevant facts are these. On September 20, 2006, in a superceding indictment, Lesure was charged with possessing multiple firearms and ammunition after previously being convicted of a felony and Goldsmith was charged with aiding and abetting the foregoing offense ("Count One"), in violation of 18 U.S.C. §§ 922(g)(1) and 2; in Count Two of the superseding indictment, Goldsmith was charged with possessing multiple firearms and ammunition after previously being convicted of a felony and Lesure was charged with aiding and abetting the foregoing offense ("Count One"), in violation of 18 U.S.C. §§ 922(g)(1), 924(e) and 2. The defendants, through separate appointed counsel, both pled not guilty and proceeded to a joint jury trial.

At trial, the government presented the following evidence. Deputy David Brown, of the Escambia County Sheriff's Office ("ECSO"), was working the late-night shift on June 9, 2006, when he responded to a radio call regarding a disturbance at room number 235 of the Western Inn, a motel in Pensacola, Florida. When he arrived at the motel, he stood in the hallway for approximately one minute and overheard two males arguing inside of room number 235. One of the males was yelling that he wanted a gun in order to shoot someone.

At some point, one of the males, whom Deputy Brown later identified as Goldsmith, opened the motel room door, observed Brown and other officers

3

standing outside, and immediately slammed the door shut. The officers then forced entry into the motel room, at which point Deputy Brown observed Goldsmith diving onto the floor and the other male, later identified as Lesure, standing near a table at the edge of the bed. In addition to the defendants, there also was a minor female, who was seated on the bed. As the officers entered the motel room, Lesure and Goldsmith continued yelling and Lesure started saying that there were firearms in the motel room. Thereafter, Deputy Brown observed in plain view two .22 caliber rounds on top of a microwave in the motel room and a loaded firearm, a .38 caliber handgun, on a shelf near the motel room door. Brown testified that the .38 caliber handgun was "readily accessible" to Goldsmith at the time he first opened the motel room door and observed the officers standing outside.

After the officers read Lesure and Goldsmith their Miranda rights, Lesure indicated that more firearms were inside of a red bag near a chair and next to the bed. The officers ultimately recovered six firearms and some ammunition from this bag, as well as a small pocket firearm, a .22 Derringer, from behind the chair. The Derringer and the bag of handguns were located in close proximity to where Lesure was standing when the officers entered the motel room. The officers also recovered six or seven "big pieces" of crack cocaine.

After the arrests, while he was sitting in the police car, Goldsmith stated that he originally went to room number 235 to get a gun to shoot two people who had allegedly robbed him of his drugs. Goldsmith also admitted that he was the person whom Deputy Brown had overheard yelling for a gun to shoot some people. The officers later determined that Lesure and his girlfriend had rented the motel room.

Deputy Krystal Jeffcoat, also of the ECSO, participated in the forced entry into room 235 and subsequent arrest of the defendants. She testified consistently with Deputy Brown's description of the events. Deputy Jeffcoat described Lesure, upon being detained, as sweating and repeatedly stuttering, "the bed, the bag, the bed, the bag." Deputy Jeffcoat also described Lesure as "real[ly] jumpy and looking over his shoulder," and "just acting very nervous." At one point, Deputy Jeffcoat asked Lesure where the bag of guns, to which Lesure had referred, was located. Lesure nodded towards a chair right next to the bed. Another officer retrieved a red book bag from under the chair, and discovered that it contained firearms and ammunition.

Deputy Jeffcoat further indicated that Lesure provided at least three false names, as well as a false address, Social Security number, and a date of birth. Lesure eventually provided Deputy Jeffcoat with his correct name and information, and explained that there were active warrants for his arrest. Deputy Jeffcoat asked

Lesure whether he was a convicted felon, to which Lesure responded affirmatively, and whether Lesure knew that it was illegal for him to possess a firearm as a convicted felon, to which Lesure also responded affirmatively.

Following Deputy Jeffcoat's testimony, Lesure and Goldsmith both stipulated that they were convicted felons, and that the firearms and ammunition seized from room number 235 on June 9, 2006 had traveled in interstate commerce. The government then rested, but reserved the right to present rebuttal testimony. The following exchange followed:

> THE COURT:   . . . I do remind you [the jury] that the defendant is not required to prove anything or call any witnesses or present any evidence. This would be the opportunity for them to do so if they wish. And reserving all rights for motions to the defendants, [defense counsel for Goldsmith]?
>
> [GOLDSMITH'S COUNSEL]: Your Honor, at this time we would make a motion for judgment of acquittal.
>
> THE COURT:   I said, I'll reserve those rights and we'll attend to those afterwards. So proceed on.

Goldsmith then testified on his own behalf. He first met Lesure in 1997 and began purchasing dope from him "every now and then." Goldsmith testified that he traveled to the Western Inn Motel on June 9, 2006, because it was "a[] place to get high []." He said that after he arrived, he began "partying and stuff" and smoking "dope" with a couple of people other than Lesure and the minor female.

6

Goldsmith eventually ran into Lesure in the motel's hallway, and asked Lesure whether he had any "dope." Lesure responded that he had "dope," as well as guns, for sale.

Thereafter, Goldsmith proceeded to another person's motel room to smoke "dope," and after doing so, left the motel premises. He later returned to the motel, at which point he went to the other person's motel room, where he smoked more dope and where another person robbed him of the dope that he had and pulled a gun on him. After he was robbed, Goldsmith left the room and then remembered that Lesure also had a room at the motel. He proceeded to Lesure's room, where he explained what had happened to him, and asked for a gun. When Lesure refused to give him a gun, Goldsmith became angry and decided to go elsewhere to find help. When he opened the motel room door to leave, he observed the police standing outside in the hallway.

According to Goldsmith, the officers then entered room number 235, and threw him to the floor and searched him after Lesure alleged that Goldsmith was in possession of a firearm. After the officers were unable to locate a gun on Goldsmith, Lesure pointed to a shelf directly behind Goldsmith and said that a gun was on a shelf. Both Goldsmith and the officer who searched him turned towards the shelving unit, and Goldsmith observed, apparently for the first time, a gun

7

lying on a shelf.  Goldsmith immediately denied that he knew anything about the gun.  An officer then removed Goldsmith from the room, and Goldsmith overheard Lesure asking his girlfriend, the minor female, to tell the police that the firearm belonged to Goldsmith.  Goldsmith, at some point, explained the situation regarding the robbery to the police, but the police nevertheless took him to jail.

Defendant Lesure presented the testimony of "M. Rich," the minor female who was in room number 235 on the night of June 9, 2006.  She said that on that evening, she, her boyfriend (Lesure), and her mother went to have dinner at the Waffle House around 9:00 p.m.  Approximately one hour later, Rich and Lesure returned to the Western Inn Motel, where they ran into Goldsmith.  Rich went inside the motel room, while Lesure remained in the hallway talking to Goldsmith.

Thereafter, Goldsmith and Lesure entered the motel room, purportedly because Goldsmith wanted to eat Lesure's leftovers from the Waffle House.  Rich said that when he entered, Goldsmith was carrying a zipped burgundy and black book bag.  Goldsmith sat down at the table in the room, and set the zipped book bag by a chair.  However, Goldsmith then stood up and walked out of the motel room, returning approximately five minutes later, when he asked Lesure to hand him a gun from the book bag so he could rob someone.  Lesure, apparently realizing for the first time that the book bag contained firearms, told Goldsmith to

8

leave the motel room. Goldsmith, in turn, opened the door to exit the motel room, and, upon observing the police standing outside in the hallway, threw a firearm that he was holding behind one of the chairs.

At one point, Rich testified that she did not actually observe Goldsmith in possession of any firearms other than the one that he threw behind the chair, but Goldsmith had walked near the shelf on which the officers discovered another firearm. At another point, however, Rich testified that she actually observed Goldsmith place the firearm on the shelf. Lesure never opened the book bag, and the book bag remained zipped the entire time. After Rich's testimony, Lesure rested.

Goldsmith then moved for a judgment of acquittal, arguing that the government had failed to satisfy its burden "as to aiding and abetting or possession in this matter." He also later asserted he was entitled to a judgment of acquittal because there was insufficient evidence to prove, beyond a reasonable doubt, that he possessed a firearm on June 9, 2006. Notably, for purposes of this appeal, Goldsmith did <u>not</u> argue for an acquittal on the aiding and abetting count on the ground that there was no evidence that he knew, or should have known, that Lesure, the principal, was a convicted felon. Lesure also moved for a judgment of

acquittal, asserting that there was insufficient evidence to find that he possessed, either actually or constructively, the firearm.

After the district court denied the motions for judgments of acquittal, the court charged the jury, including the following Eleventh Circuit Pattern Jury Instruction with respect to aiding and abetting:

[T]he guilt of a defendant in a criminal case may be proved without evidence that the defendant personally did every act involved in the commission of the crime charged. The law recognizes that[,] ordinarily[,] anything a person can do for one's self may also be accomplished through the direction of another person as an agent[,] or by acting together with[,] or under the direction of[,] another person or persons in a joint effort.

So, if the acts or conduct of an agent, employee[,] or other associate of the defendant are willfully directed or authorized by the defendant, or if the defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had personally engaged in such conduct.

However, before any defendant can be held criminally responsible for the conduct of others, it is necessary that the defendant willfully associate in some way with the crime, and willfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided or abetted the crime. Now, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

See also 11th Cir. Pattern Jury Instruction (Crim.), Special Instruction 7. Neither Lesure nor Goldsmith objected to the court's use of this Circuit's Pattern Jury

10

Instruction for aiding and abetting, nor did either defendant propose any other version of the instruction for aiding and abetting.

The jury found the defendants guilty, as charged in both counts. Goldsmith later filed a written motion for a judgment of acquittal, or, alternatively, for a new trial, pursuant to Fed. R. Crim. P. 29. Concerning the aiding and abetting offense charged in Count One, Goldsmith argued that the evidence demonstrated that when he entered the motel room, Lesure already was in possession of the firearms. Thus, according to Goldsmith's argument, he could not have been guilty of aiding and abetting Lesure in the principal offense, because that offense had already been committed when he arrived on the scene. Goldsmith also asserted that there was no evidence that he willfully joined together with Lesure to aid and abet Lesure's possession of the firearms. Notably, Goldsmith did not argue that knowledge of a principal's status as a convicted felon was an essential element of the offense of aiding and abetting a § 922(g) violation, nor did he assert that the government failed to satisfy this element.

The district court denied Goldsmith's post-trial motion. The district court sentenced Lesure to a 120-month term of imprisonment on Count One and a 42-month term on Count Two, with the terms to run consecutively. The district court sentenced Goldsmith to a 120-month term of imprisonment on Count One and a

360-month term on Count Two, with the terms to run concurrently. This appeal followed.

## II.

We first address Lesure's challenge to the sufficiency of the evidence to support his conviction for violating 18 U.S.C. § 922(g), as charged in Count One. We review a challenge to the sufficiency of the evidence de novo, resolving all reasonable inferences from the evidence in favor of the jury's verdict. See United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). The evidence is sufficient where a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003). "The evidence may be sufficient though it does not 'exclude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion except that of guilty. . . . A jury is free to choose among reasonable constructions of the evidence.'" United States v. Alvarez-Sanchez, 774 F.2d 1036, 1039 (11th Cir. 1985) (citation omitted).

To sustain a conviction under § 922(g), the government must prove, beyond a reasonable doubt, three elements: "(i) that the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year, (ii) that the defendant knowingly possessed a firearm or ammunition, and (iii) such firearm or

ammunition was in or affected interstate commerce." United States v. Funches, 135 F.3d 1405, 1406-07 (11th Cir. 1998). Since Lesure stipulated to the first and third elements, the only element at issue is the second element: whether he knowingly possessed a firearm or ammunition.

"[A]ny firearm possession, actual or constructive, by a convicted felon is prohibited by [18 U.S.C. § 922(g)]." United States v. Howell, 425 F.3d 971, 977 (11th Cir. 2005). The government can establish actual possession of a firearm by proving that "the defendant either had physical possession of or personal dominion over the thing allegedly possessed." United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). "[T]he government can establish constructive possession of a firearm by proving 'ownership, dominion, or control over the firearm.'" United States v. Thompson, 473 F.3d 1137, 1143 (11th Cir. 2006) (citations omitted), cert. denied, 127 S. Ct. 2155 (2007). A defendant can be in constructive possession of a firearm even if it is not on him or near his person. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). Moreover, a defendant may be deemed to be in constructive possession of contraband where he owns or exercises dominion and control over the premises in which the contraband is concealed. United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006).

Viewing the evidence in the light most favorable to the jury's guilty verdict, we conclude that there was ample evidence from which a reasonable juror could conclude, beyond a reasonable doubt, that Lesure was, at the very least, in constructive possession of multiple firearms at the time of his arrest in the motel room. Although he was not holding a firearm when the police entered the motel room, the government demonstrated that he exerted dominion and control over the firearms and ammunition through evidence that he had rented the motel room in which the contraband was seized, and that the book bag of firearms and ammunition were located "right next to him" when the police officers entered the room. Moreover, according to Deputy Jeffcoat, after Lesure was detained, but before the officers discovered the book bag of guns, he was "real[ly] jumpy and looking over his shoulder," and "just acting very nervous." He also began sweating and repeatedly stuttering, "[T]he bed, the bag, the bed, the bag," and then mentioned something about a bag of guns in the motel room. According to Deputy Jeffcoat, Lesure initially provided at least three false names, and a false address, Social Security number, and date of birth. On this record, there was sufficient evidence on which a reasonable juror could have relied to conclude that Lesure was guilty, beyond a reasonable doubt, of possession of a firearm by a convicted felon.

14

III.

As for Goldsmith's challenge to the district court's denial of his motion for a judgment of acquittal, based on the insufficiency of the evidence to convict him of aiding and abetting, as well as his related challenge to the jury instruction on aiding and abetting, we likewise discern no reversible error. We normally review such claims de novo. See Rudisill, 187 F.3d at 1267 (sufficiency of the evidence); United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (jury instruction). However, in the district court, Goldsmith never asserted the arguments he makes on appeal -- that the government was required to prove that he knew of Lesure's status as a convicted felon, but failed to do so, and that the district court was required to so instruct the jury.[2] Accordingly, our review is for plain error only. See United States v. Hasson, 333 F.3d 1264, 1277 (11th Cir. 2003) (jury instruction); United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998) (sufficiency of the evidence). Plain error is found only where the defendant demonstrates: (1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights; and (4) the error "seriously affects the fairness,

---

[2] His general objection to the sufficiency of the evidence did not preserve the more specific claim he now makes in this Court. Cf. United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986) ("To preserve an issue at trial for later consideration by an appellate court, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice").

15

integrity, or public reputation of a judicial proceeding." United States v. Olano, 507 U.S. 725, 732 (1993).

To sustain a conviction for aiding and abetting, the evidence must show that the defendant shared the criminal intent of the principal and committed an overt act in furtherance of the criminal venture. See United States v. Guida, 792 F.2d 1087, 1095 (11th Cir. 1986); see also United States v. Schwartz, 666 F.2d 461, 463 (11th Cir. 1982) (holding that to prove a defendant guilty of aiding and abetting the commission of a crime, in violation of 18 U.S.C. § 2, the government must prove "that the defendant associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed" (quotation and citation omitted)). Even when the government provides little direct evidence of an aider-and-abettor's intent, a jury's conviction will not be overturned if there is adequate circumstantial evidence from which the jury could infer the defendant's knowledge of the criminal scheme. See United States v. Griffin, 324 F.3d 330, 357-58 (5th Cir. 2003).

Given the applicable standard of review, it is notable to observe at the outset that "[w]hen neither the Supreme Court nor [we have] resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.), cert. denied, 128 S.Ct. 257

16

(2007). As Goldsmith recognizes in his brief, neither this Court nor the Supreme Court has addressed whether a defendant's knowledge that the principal was a convicted felon is an essential element of the offense of aiding and abetting a Section 922(g) violation. Moreover, the circuits that have addressed the issue of an aider-and-abettor's intent, within the context of a § 922(g) offense, are split on the issue. Compare United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) ("The government did not have to prove Canon, as a principal, knew he was a felon. No greater knowledge requirement applies to [an aider and abettor]") (internal citation omitted), and United States v. Moore, 936 F.2d 1508, 1527-28 (7th Cir. 1991) (concluding that a defendant satisfied the "association" prong of the "aiding and abetting" test because he was aware of the principal's use of a gun in multiple armed robberies), with United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) (holding that "in order for aiding-and-abetting liability to attach under § 922(g), the government must show that the defendant knew or had cause to know that the principal was a convicted felon"), and United States v. Xavier, 2 F.3d 1281, 1286 (3d Cir. 1993) ("The government concedes 'proof of knowledge (or reasonable cause to believe) of an ex-felon's status is a required element for conviction, as an aider and abettor, under Section 922(g)(1).' We agree.").

Thus, given the sharp difference of opinion on the issue, even if we were to find error,[3] it is clear that Goldsmith cannot satisfy his burden to show that such error was plain. In short, neither the district court's denial of Goldsmith's motion for judgment of acquittal nor the district court's use of the Pattern Jury Instruction on aiding and abetting was plain error since it is not plain under Supreme Court precedent, or our law, that an aider and abetter's knowledge of the principal's status as a convicted felon is an essential element of the offense of aiding and abetting a § 922(g) violation.

**AFFIRMED.**

---

[3]As for the elements of the underlying substantive crime, again, to establish a violation of § 922(g), the government must prove: "(i) that the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year, (ii) that the defendant knowingly possessed a firearm or ammunition, and (iii) such firearm or ammunition was in or affected interstate commerce." Funches, 135 F.3d at 1406-07. Given Goldsmith's failure on the second prong of the plain error test, we need not reach the first prong of the test, but pause to note that as to the principal, knowledge of felon status is not an element of a § 922(g) offense. Cf. United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (discerning no error in district court's § 922(g) instruction to the jury that it was not necessary for the defendant to know that he had been convicted of a felony; citing United States v. Langley, 62 F.3d 602, 604-606 (4th Cir. 1995) (holding that proof that a defendant had knowledge of his status of a convicted felon is not needed in order to prove that a defendant knowingly possessed a firearm after a felony conviction)); United States v. Miller, 105 F.3d 552, 555 (9th Cir. 1997) ("We agree with the decisions from other circuits that the § 924(a) knowledge requirement applies only to the possession element of § 922(g)(1), not to the interstate nexus or to felon status."). We would be hard-pressed to require the government to satisfy a greater knowledge requirement as to a § 922(g) aider and abettor. See United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) ("The government did not have to prove Canon, as a principal, knew he was a felon. No greater knowledge requirement applies to [an aider and abettor]") (internal citation omitted)).

18