**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 14-1669

UNITED STATES OF AMERICA,

Appellee,

v.

PAUL FORD,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

---

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

---

Andrew Levchuk and Bulkley, Richardson & Gelinas on brief for appellant.
Thomas E. Delahanty, II, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.

---

August 19, 2015

---

**THOMPSON**, <u>Circuit Judge</u>.

## Overview

As part of a plea bargain, Paul Ford pled guilty to two felonies: conspiring — from 2006 to November 2011 — with James F., Darlene, and James T. Ford (Paul's father, mother, and brother) to manufacture 100 or more marijuana plants, and manufacturing — in November 2011 — 50 or more marijuana plants on his own. <u>See</u> 21 U.S.C. §§ 841(a)(1), 846.[1] The district court sentenced him to 46 months in prison — at the very bottom of the court-calculated guidelines range — and he now appeals, claiming that the term imposed is both procedurally and substantively unreasonable. Because it is neither, we affirm, with these briefest of comments.[2]

---

[1] "Grow" would be a better word than "manufacture," but the statute uses "manufacture." <u>See</u> <u>DeBartolo</u> v. <u>United States</u>, 790 F.3d 775, 777 (7th Cir. 2015) (Posner, J.) (making that very point).

[2] Four quick heads up:

<u>First</u>: Ford agreed to waive his appeal rights, but only if the court sentenced him to a prison term "that does not exceed twelve months and one day." Because the sentence exceeded that limit, the government concedes that Ford's appeal waiver does not apply. And so we decide this appeal on the merits. <u>See</u> <u>United States</u> v. <u>Serrano-Mercado</u>, 784 F.3d 838, 841 n.1 (1st Cir. 2015) (taking that tack in a similar situation).

<u>Second</u>: As is customary in cases like this, we pull the facts from the plea agreement, the undisputed parts of the pre-sentence investigation report, and the transcripts of the change-of-plea and sentencing hearings. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Romero-Galindez</u>, 782 F.3d 63, 65 n.1 (1st Cir. 2015).

## Procedural-Reasonableness Claims

Paul first complains about the amount of drugs the court attributed to him, an amount that helped set the base offense level for the guidelines range. The district court held him responsible for at least 100 but less than 400 kilograms of marijuana. So long as a preponderance of the evidence supports that finding, a reasonable estimate will suffice. See, e.g., United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013). And because he attacks the court's factfinding, our review is for clear error, id. — i.e., meaning we will reverse only if the court was "wrong with the force of a 5 week old, unrefrigerated, dead fish," see Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 46 (1st Cir. 2013) (quoting S Indus., Inc. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001)).

Paul basically concedes responsibility for 96.435 kilograms of marijuana. He gets that number this way: he takes 28.942 kilograms seized from his parents' house (all the Fords

---

Third: Because there are four Fords — Paul, James F., Darlene, and James T. — we will use first names from here on (we intend no disrespect).

Fourth: We review preserved challenges to both the procedural and substantive reasonableness of a sentence for abuse of discretion, though we assess the district court's factfinding for clear error. See United States v. Razo, 782 F.3d 31, 36 (1st Cir. 2015).

were there when agents executed a search warrant, by the way), adds 5.493 kilograms taken during a consented-to search of his house, and tacks on 62 kilograms based on drug ledgers — showing income from October 2009 to October 2011 — seized from his parents' house. As Paul sees things, the evidence left him 3.565 kilograms short of the 100 kilogram threshold, which, the argument continues, put him in a lower base offense level.

We see the things differently, and for a simple reason. Record evidence shows that James F. told agents two important things: first that he grew 11.25-13.5 pounds — or 5.103-6.123 kilograms — of marijuana about every 9 weeks, and second that he was about to complete "harvest" number "38" when the Fords got nabbed. Record evidence — James F.'s October 2011 email saying Paul has been a "dependable worker" since moving into "Dana Skinner's" house (we don't know who "Dana Skinner" is) and Paul's November 2011 comments to agents that he had been living at Dana's for 3-4 years — supportably shows that Paul was involved with the Ford family conspiracy at least as far back as 2007 or 2008. So putting all this together, taking, say, just one "harvest" of 5.103 kilograms (the lower number given by James F.) in 2007 or 2008 puts the kilogram tally at 101.538 (96.435 — the number Paul says the "court could have and should have" stopped at — plus 5.103 equals 101.538).

Seeking a way around this conclusion, Paul principally argues that the marijuana amount needed to reach the 100 kilogram mark was not reasonably foreseeable to him. But the court held him responsible for drugs he helped produce — after all, as the court expressly noted, Paul unequivocally admitted at the change-of-plea hearing that he and other coconspirators "planted, tended, harvested, processed and packaged the marijuana" at his home and his parents' (that concept was contained in the government's version of events, to which he agreed). So the "reasonable foreseeability" concept holds no sway here, because "[a] defendant simply cannot be heard to complain that he could not reasonably foresee acts that he himself engineered." United States v. Conley, 156 F.3d 78, 85 (1st Cir. 1998).

Paul next blasts the court for not giving him a 2-level reduction in his offense level as a (supposed) "minor participant" in the conspiracy. See USSG § 3B1.2(b) (2012 version). The burden, though, is on him to prove by a preponderance of the evidence that he is both less culpable than (a) most of those involved in the conspiracy and (b) most of those who have done similar crimes. See, e.g., United States v. Meléndez-Rivera, 782 F.3d 26, 28 (1st Cir. 2015).[3] Absent a mistake of law — and we

_____

[3] See generally USSG § 3B1.2 cmts. 5 and 4 (explaining that a "minor participant" is one who is "less culpable than most other participants, but whose role [can]not be described as minimal,"

- 5 -

see none here — we review for clear error, knowing that, given this deferential standard, role-in-the-offense battles "will almost always be won or lost in the district court." Id. (quoting United States v. Garciani, 61 F.3d 70, 75 (1st Cir. 1995)).

Hoping to find clear error, Paul accuses the district court of not comparing his part in the conspiracy with his parents'. The charge falls flat, however. The sentencing transcript shows that the court focused (for example) on how the parents, and not Paul, sold the marijuana, while Paul — as he himself acknowledged — grew and "took care of the marijuana." Well, then, says Paul, he should have gotten a minor-role adjustment because he was not as critical to the scheme as his drug-peddling parents. But that is a false contrast, for as we have said many times, one "need not be the key figure" in a criminal plan "to be denied a mitigating role-in-the-offense adjustment." Meléndez-Rivera, 782 F.3d at 29. Just as devastating to his position is the fact that he makes no effort to show how he is less culpable than the "mine-run" of wrongdoers "who have committed similar crimes" — perhaps that is because we have routinely upheld the denial of a minor-participant adjustment for defendants less involved in drug conspiracies than Paul. See id. (highlighting

with "minimal" reserved for a "participant" who is "plainly among the least culpable of those involved in the conduct of the group").

- 6 -

cases affirming an adjustment denial where a defendant's only role in the scheme was driving a truck with drugs, unloading drugs, or standing guard).

Having found no procedural error in what the district court did, we now check the sentence for substantive reasonableness, keeping in mind that a sentence is substantively reasonable if it reflects a plausible rationale and a defensible result. United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

**Substantive-Reasonableness Claims**

Paul thinks his 46-month sentence (again, the lowest term in the guidelines range) is far too long, for four reasons — none of which we accept.

For starters Paul says that he should have caught a break because "marijuana is now legal" in some states. But that argument goes nowhere, because manufacturing marijuana is still a crime under federal law. See 21 U.S.C. § 841(a)(1).

Next Paul faults the district court for considering "previously dismissed charges" in perusing his criminal history — criminal history is a sentencing factor under 18 U.S.C. § 3553(a). But he does not back up his claim with any authority, nor does he give us any meaningful discussion on this issue. So the claim is waived. See, e.g., Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir.

2010) (stressing that "appellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived"); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (similar).

Also insubstantial is Paul's claim that the district court jacked up his sentence because of firearms found in his parents' home. Yes, probation did recommend a firearms enhancement in calculating Paul's offense level. But the government did not ask for that enhancement. Undaunted, Paul identifies this comment from the district court at sentencing as the best indication that the firearms still influenced the sentence:

> Although there were firearms at the defendant's parents' residence, the court — the government has agreed not to press the firearms enhancement as the defendant — the court knows the defendant has pleaded guilty and it saves the government the expense and turmoil at trial.

But neither this nor any other statement by the court leaves us with "a definite and firm conviction" (the usual abuse-of-discretion standard) that the enhancement played any role improper in Paul's sentence. See generally United States v. Joubert, 778 F.3d 247, 253 (1st Cir. 2015) (internal quotation marks omitted) (defining abuse of discretion).

Last but not least, we can make quick work of Paul's final contention — that "the district court spent entirely too

much time" talking about "the Ford family's 'bizarre' dynamic." True, the court did spotlight Paul's "unusual family" — mentioning (for example) how his "growing up" with marijuana being the family business's stock-in-trade makes it "not surprising that [he] thought it was normal to follow [his] parents' footsteps." But the court made these comments in the context of discussing Paul's drug history and what sentence might deter him — both legitimate § 3553(a) factors. See, e.g., United States v. Tavares, 705 F.3d 4, 32 (1st Cir. 2013). Within wide limits, it is up to the district court to decide how much weight to give each relevant § 3553(a) factor in a particular case. See United States v. Maguire, 752 F.3d 1, 7 (1st Cir. 2014); United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011). And unfortunately for Paul, in attacking his within-guidelines sentence he has not offered the required "powerful mitigating reasons" needed to convince us that the court unreasonably balanced those factors here — which makes his ultimate claim a no-go too. See Clogston, 662 F.3d at 592-93 (internal quotation marks omitted).

The bottom line then is that Paul's substantive-reasonableness arguments — like his procedural-reasonableness ones — fail because we find no abuse of discretion.

## Final Words

Our work over, we **<u>affirm</u>** Paul's sentence.