# United States Court of Appeals
## For the First Circuit

No. 15-1303

UNITED STATES OF AMERICA,

Appellee,

v.

DARLENE FORD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Thompson and Kayatta, Circuit Judges,
and Mastroianni,* District Judge.

Steven Alan Feldman, with whom Feldman and Feldman was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

April 13, 2016

* Of the District of Massachusetts, sitting by designation.

**KAYATTA**, **Circuit Judge**.  The four members of the Ford family ran an illicit, indoor marijuana farm, for which they have all been sentenced to prison.  This appeal by Darlene Ford primarily concerns not the marijuana, but rather Darlene's semi-automatic rifle, which she allowed her husband, James F. Ford, to use for target practice.  James's possession of a firearm was a crime because he had previously been convicted of a criminal offense "punishable by imprisonment for a term exceeding one year." 18 U.S.C. §§ 922(g)(1), 924(a)(2).  Relying on the criminal code's general aiding and abetting provision, 18 U.S.C. § 2 ("section 2"), the government indicted Darlene for, among other crimes, letting James possess the rifle.  Over Darlene's objection, the trial court instructed the jury that it could convict Darlene if she "knew or had reason to know" that James had previously been convicted of a crime punishable by more than one year in prison. After the jury convicted her of the aiding and abetting charge, and also of conspiring in the family's illicit marijuana growing operation and of maintaining a drug-involved residence, Darlene appealed.  In a case of first impression, we find that the jury should not have been allowed to convict Darlene of aiding and abetting James's unlawful possession of a firearm merely because she "had reason to know" that James had previously been convicted

- 2 -

of a crime punishable by more than a year in prison.  We otherwise reject Darlene's challenges to her conviction and sentence.

## I.   Background

Maine drug enforcement officers executed a warrant to search the Fords' home in Monroe, Maine, on November 15, 2011.  In the home at the time were Darlene, her husband James, and their adult sons Jim and Paul.[1]  The search uncovered evidence of a substantial indoor marijuana growing operation, including 211 marijuana plants and financial records consistent with a significant marijuana distribution business.  The agents also found two dismantled semi-automatic rifles, various firearm parts, and a video of James holding and firing one of the rifles at a firing range as Darlene narrates.

The United States subsequently indicted the four family members on various drug and firearms charges.  Sons Paul and Jim pled guilty of, among other crimes, conspiring with their parents to manufacture 100 or more marijuana plants.  They are serving prison sentences of 46 and 60 months, respectively.  United States v. Ford, No. 14-1669, slip op. at 2 (1st Cir. Aug. 19, 2015) (unpublished) (Paul); United States v. Ford, No. 1:12-cr-00163-

---

[1] In order to avoid confusion in referring to four people with the same last name, we refer to the members of the Ford family by their given names, see, e.g., United States v. Serunjogi, 767 F.3d 132, 135 n.1 (1st Cir. 2014), and we refer to Darlene's husband as "James" and to her son as "Jim."

JAW-2 (D. Me. June 03, 2013), ECF No. 143 (Jim).  After a jury trial, husband James was convicted of conspiring with his sons and wife to manufacture 100 or more marijuana plants; of manufacturing 100 or more marijuana plants; of maintaining drug-involved residences; and of being a felon in possession of a firearm. United States v. Ford, No. 1:12-cr-00163-JAW-1 (D. Me. Nov. 24, 2014), ECF No. 400.  That conviction is the subject of a separate pending appeal before this court, United States v. Ford, No. 14-2245 (1st Cir.).

Darlene was tried separately from her husband.  Her first trial ended when the jury deadlocked.  A second trial resulted in a jury verdict convicting Darlene of conspiring to manufacture 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846; of maintaining a drug-involved residence, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and of aiding and abetting a felon's possession of a firearm, in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2).  Darlene now appeals her conviction on the aiding and abetting count, plus her sentence: seventy-eight months in prison on each count, to run concurrently, followed by three years of supervised release on each count, also to run concurrently.

Darlene concedes that she purchased two assault rifles found by agents at her Monroe home, and that James used one of the

rifles at least once in her presence. In short, it is plain that she aided his possession of a firearm. Also not disputed is the government's proof that five to seven years before Darlene aided him in possessing the firearm,[2] James had been convicted in Massachusetts of three felonies punishable by more than one year in prison: possessing marijuana with intent to cultivate and distribute; possessing a firearm without proper identification; and possessing ammunition without proper identification. What was contested at trial on the aiding and abetting count was Darlene's knowledge of those convictions.

The evidence to which the government points us on the details of James's 2004 convictions is skimpy. It does not reveal how many times James appeared at the courthouse, whether he ever served a day in custody, or what, if any, conditions or probationary restrictions were imposed on him as a result of the conviction. Nor does that evidence reflect any involvement by Darlene in any appearance, meeting, or communication concerning the 2004 prosecution.

The government's evidence trained, instead, on the circumstances that gave rise to the 2004 charges. Massachusetts State Trooper James Bruce ("Bruce") testified that on October 11,

---

[2] The Superseding Indictment alleged that Darlene had aided and abetted James's possession of a firearm "[o]n [or] about October 16, 2009 and November 15, 2011."

2002, he conducted searches at what were then the Fords' two residences in Wakefield, Massachusetts: 2 and 5 Fellsmere Avenue ("No. 2" and "No. 5," respectively). No. 2 was the voter registration address for Paul and Jim, and No. 5 was the voter registration address for Darlene and James. Bruce recalled substantial marijuana growing operations in both No. 2 and No. 5. He mentioned the "overpowering" smell of marijuana in both homes, the presence of marijuana plants in various stages of growth, and the discovery of other marijuana-related paraphernalia.

While police were searching No. 2 in 2002, a car pulled up to No. 5, and Bruce saw "[a] man, a woman, and a younger man" emerge from the vehicle. The woman and the younger man walked into No. 5, while the older man, James, walked over to the officers at No. 2. Bruce testified that he "believed the woman to be" Darlene because he had seen her driver's license photograph prior to conducting the search. Darlene's counsel questioned Bruce's knowledge and whether he was certain in 2011 that the woman at the scene he observed in 2002 was Darlene.

Darlene took the stand in her own defense. She testified that on October 11, 2002, she was at work from 12:00 to 9:00 PM and that she had never seen Trooper Bruce before the trial in this case. At the beginning of her direct examination, she said that she first heard about the search of her residence (No. 5) on the

evening of the search. She then recanted, claiming that she did not learn about the search until nine years later, when the Maine prosecution began. She further claimed that she did not know that her husband had been arrested in 2002 in connection with the search, that she did not learn about his Massachusetts conviction until "this [Maine] case started unfolding," and that she therefore did not know at the time the video was taken that her husband had a prior conviction or was prohibited from possessing a firearm. Although she knew that she and her husband had transferred No. 2 to the Commonwealth of Massachusetts pursuant to a civil forfeiture, she claimed to have believed that the reason was to keep her son Paul out of jail, not because of any conviction or charges related to her husband.

Closing arguments at Darlene's trial highlighted the parties' competing views of the state of mind the government needed to prove to convict Darlene of aiding and abetting James's crime. Defense counsel stressed that Darlene did not actually know about her husband's prior felony conviction, while the government emphasized the ample circumstantial evidence suggesting that Darlene "knew or had reason to know" about James's prior conviction.

A good portion of the charge conference focused on the state of mind instruction for the aiding and abetting count. In

relevant part, the government argued that it need only prove that Darlene "knew or had reason to know" that James had been convicted of a crime classified as a felony under federal law. Darlene's counsel objected to inclusion of the phrase "or had reason to know" in the jury instructions. After a recess for research, the trial court determined that there was no direct precedent on point in this circuit. It fairly noted, though, that decisions in other circuits seemed to support the government. Acknowledging that "we're sort of flying without guidance," the trial court accepted the government's position over objection, telling the jury that it needed to find that Darlene:

> knew or had reason to know that James F. Ford had been convicted in any court of at least one crime classified as a felony under federal law; and, . . . , that Darlene Ford consciously shared James F. Ford's knowledge that he possessed one or more -- one or both of the firearms, intended to help him possess it, and took part in the endeavor, seeking to make it succeed. The government does not have to prove that James F. Ford or Darlene Ford knew their conduct was illegal.

## II. Analysis

### A. Jury Instructions for Aiding and Abetting a Felon's Possession of a Firearm

#### 1. Standard of Review

We review de novo Darlene's preserved argument that the instructions omitted or materially altered the elements of an

offense.  <u>United States</u> v. <u>Godin</u>, 534 F.3d 51, 56 (1st Cir. 2008).[3]

If we conclude that the district court instructed the jury in error, we must then determine whether the error was harmless.  <u>Id.</u> at 61.  If not, "we vacate the conviction and remand for a new trial."  <u>Id.</u>  A jury instruction error is not harmless if "the record contains evidence that could rationally lead to a contrary finding" in the absence of the error.  <u>Id.</u> (quoting <u>United States</u> v. <u>Baldyga</u>, 233 F.3d 674, 682 (1st. Cir. 2000)).

### 2.  Scienter

We begin with Congress's words:  "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).  Nothing in this language expressly addresses the state of mind that a person need possess in order to be guilty of aiding and abetting the commission of a crime.  In the presence of such silence, we turn to a line of Supreme Court "cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its

---

[3] By contrast, we review properly preserved objections to "the form and wording" of a district court instruction for abuse of discretion.  <u>United States</u> v. <u>Gonzalez</u>, 570 F.3d 16, 21 (1st Cir. 2009) (quoting <u>United States</u> v. <u>McFarlane</u>, 491 F.3d 53, 59 (1st Cir. 2007)).  And we similarly review for abuse of discretion (under a three-part test) a district court's determination that an ancillary instruction requested by a defendant should have been added to the otherwise generally required instructions.  <u>United States</u> v. <u>González-Pérez</u>, 778 F.3d 3, 15 (1st Cir. 2015).

terms does not contain them." United States v. X-Citement Video, Inc., 513 U.S. 64, 70 (1994). Beginning with Morissette v. United States, 342 U.S. 246, 250 (1952), these cases establish a "background presumption," X-Citement Video, Inc., 513 U.S. at 70, "in favor of a scienter requirement [that applies] to each of the statutory elements that criminalize otherwise innocent conduct," id. at 72. That scienter requirement, absent some indication to the contrary, requires that the government prove the existence of some mens rea. United States v. U.S. Gypsum Co., 438 U.S. 422, 436 (1978) (recognizing that "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence") (alteration in original) (quoting Dennis v. United States, 341 U.S. 494, 500 (1951) (opinion of Vinson, C.J.)). Proof of a mens rea, as conventionally understood, requires proof "that the defendant know the facts that make his conduct illegal." Staples v. United States, 511 U.S. 600, 605 (1994). This requirement that "the defendant know the facts that make his conduct fit the definition of the offense . . . is reflected in the maxim ignorantia facti excusat." Id. at 608 n.3. In this respect, the law seeks to align its

punitive force with the "ability and duty of the normal individual to choose between good and evil."  Morissette, 342 U.S. at 250.

This long-standing rule of statutory interpretation may be overborne by "some indication of congressional intent, express or implied, . . . to dispense with mens rea as an element of a crime."  Staples, 511 U.S. at 606 (italics omitted).  So, properly framed, the question here is whether we find in the general aiding and abetting statute any such indication, express or implied, that Congress intended that we imprison a person even if that person did not know all the facts that are necessary to classify the principal's behavior as criminal.

As we have already observed, nothing in section 2 provides any such express indication.  And when we look for implied indications in Congress's words, we find that they point in favor of the background presumption.  The words "aids, abets, counsels, commands, induces or procures" all suggest that a person violates section 2 only if the person has "chosen, with full knowledge, to participate in the illegal scheme."  Rosemond v. United States, 134 S. Ct. 1240, 1250 (2014).  This choice, which the Rosemond Court described as a "moral" choice, id. at 1249, can hardly be presented as such if one does not know the very facts that

distinguish the behavior in question from that which is perfectly innocent.

Our own circuit precedent in construing section 2 points firmly in the same direction. In United States v. Tarr, 589 F.2d 55 (1st Cir. 1978), we held that a person could not be held criminally liable under section 2 for aiding and abetting persons engaged in the business of dealing in firearms even though the defendant sold the principals a gun illegally and even though the principals were in fact engaged in the business of dealing firearms, id. at 58-60. Rather, the defendant could only be convicted if he "knew that [the principals] were engaged in the business of dealing in firearms, which is one of the elements of the [underlying] crime charged." Id. at 60.

More recently (and after the trial of this case), in United States v. Encarnación-Ruiz, 787 F.3d 581 (1st Cir. 2015), we considered whether a defendant could be liable under section 2 for aiding and abetting the production of child pornography if he did not know the key fact that turned the otherwise legal production of pornography into a crime, i.e., that the person depicted was a minor, id. at 583-84. Applying Rosemond, we reasoned that "to establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged

offense." Id. at 588. Therefore, because "[p]roducing child pornography is illegal precisely because the person in the visual depiction [is] a minor[,] [i]f an individual charged as an aider and abettor is unaware that the victim was underage, he cannot 'wish[] to bring about' such criminal conduct and 'seek . . . to make it succeed.'" Id. at 588 (quoting Rosemond, 134 S. Ct. at 1248). We emphasized that aiding and abetting is premised on a finding of "fault," and that under general principles of accomplice liability, there can be no liability without fault. Id. at 589. To be at "fault" in aiding and abetting a violation of the child pornography statute, one must know the victim was a minor, even if the principal does not also have to know.

Similarly, but for James's criminal history, there would have been no gun possession crime under section 922(g)(1). Hence, if Darlene was not aware of that history, she could not have acted with the requisite criminal purpose. To rule otherwise would be to say that we can put a person in prison for a crime, without congressional direction, merely because the person was negligent in failing to be aware of the fact that transformed innocent behavior into criminal behavior.

The breadth of section 2 reinforces our conclusion. While certain crimes that the Supreme Court has termed "public welfare" or "regulatory" offenses can be construed as implicitly

- 13 -

eschewing a mens rea as an element, see generally Staples, 511 U.S. at 606-07 (discussing examples of such), section 2 applies uniformly to the aiding and abetting of all federal crimes, very many of which indisputably are not public welfare or regulatory offenses. Section 2 also expressly tracks the penalties available for the underlying crimes, in this instance a prison sentence of up to 10 years. 18 U.S.C. § 924(a)(2). The exposure to such a sentence buttresses the case for reading into section 2 the traditional background presumption of scienter as a necessary element of the offense. See Staples, 511 U.S. at 618 (eschewing a mens rea requirement "hardly seems apt . . . for a crime that is a felony . . . . After all, 'felony' is . . . 'as bad a word as you can give to man or thing.'" (quoting Morissette, 342 U.S. at 260)).

A simple way to illustrate the common sense in finding section 2 to contain as an element the ordinary form of a mens rea is to consider the firearm element of the underlying crime here at issue. Suppose "Joe," a convicted felon, asks his neighbor "Sally" whether he may borrow her suitcase for a trip, and Sally agrees, forgetting that she left in the suitcase a handgun that Joe then finds and uses. Few would think that Sally would be guilty of aiding and abetting the possession of a firearm by a felon merely because she "had reason to know" that the handgun was in the

suitcase.  Instead, we would expect Sally--as an aider and abettor--actually to know the essential circumstance that makes Joe's conduct criminal.  See Rosemond, 134 S. Ct. at 1248-49 (noting that the intent requirement of section 2 is "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense").  And if she need know that there was a gun in her suitcase in order to be convicted of aiding and abetting, one would think that she would also need to know the other fact essential to labeling Joe's conduct criminal; i.e., that he had been convicted of a crime punishable by more than a year in prison.

This is not to say that a conviction under section 2 requires that the aider and abettor know that the principal's conduct is unlawful.  Customarily, the mens rea element is satisfied if the defendant "know[s] the facts that make his conduct fit the definition of the offense."  Staples, 511 U.S. at 607 n.3 (citing the maxim ignorantia facti excusat).  Conversely, ignorance that the known facts constitute a crime provides no defense, except perhaps in extremely rare cases in which the defendant has "such insufficient notice [of the law] that it [falls] outside the bounds of due process,"  United States v. Denis, 297 F.3d 25, 29 (1st Cir. 2002) (citing Lambert v. California, 355 U.S. 225, 229-30 (1957)), or when Congress has

- 15 -

dictated otherwise, <u>Ratzlaf</u> v. <u>United States</u>, 510 U.S. 135, 149 (1994) (noting an exception to the "venerable principle that ignorance of the law generally is no defense" when Congress has "decree[d] otherwise"); <u>Cheek</u> v. <u>United States</u>, 498 U.S. 192, 201-02 (1991) (holding that, for the purposes of complex criminal tax laws requiring specific intent and willfulness, the government must prove that the defendant knew of his legal duty). Thus, if Darlene knew that James had previously been convicted of a crime punishable by more than a year, she would be liable for knowingly giving him a firearm even if she did not know that the law declared his possession to be criminal.

We are aware that the Ninth Circuit ruled in 1993 that a person may be liable for aiding and abetting the possession of a firearm in violation of section 922(g)(1) without any knowledge at all that the principal was previously convicted of a crime punishable by more than a year. <u>United States</u> v. <u>Canon</u>, 993 F.2d 1439, 1442 (9th Cir. 1993). <u>Canon</u> opined that the government need not show that the principal knew he had been convicted of such a crime, hence there should be no need to show that the aider and abettor was aware of the conviction. <u>Id.</u> The Ninth Circuit itself has since expressed "serious reservations regarding the soundness"

of that reasoning.  United States v. Graves, 143 F.3d 1185, 1188 n.3 (9th Cir. 1998).

We share such reservations regarding the first part of Canon's reasoning, and disagree with the second part.  First, while those circuits to have addressed the question of the required state of mind for the principal have affirmed Canon's assumption that the government need not show that the principal knew that he had been convicted of a crime punishable by more than a year,[4] a good argument can be made that the government actually does need to prove, in a case against the principal under section 922(g)(1), the principal's knowledge of his prior conviction.  See 18 U.S.C. § 924(a)(2) (providing penalties for "knowingly" violating

---

[4] United States v. Games-Perez, 667 F.3d 1136, 1140 (10th Cir. 2012); United States v. Olender, 338 F.3d 629, 637 (6th Cir. 2003); United States v. Kind, 194 F.3d 900, 907 (8th Cir. 1999); United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam); United States v. Langley, 62 F.3d 602, 605–06 (4th Cir. 1995)(per curiam); United States v. Burke, 888 F.2d 862, 867 n.7 (D.C. Cir. 1989); United States v. Dancy, 861 F.2d 77, 81–82 (5th Cir. 1988)(per curiam).  Although this circuit's decision in United States v. Smith, 940 F.2d 710 (1st Cir. 1991), has been cited as standing for the proposition that the government need not prove the principal knew he was a felon, Smith's holding actually held it was unnecessary for the government to prove the defendant's knowledge of the law itself, i.e., ignorance of the law is no excuse.  Id. at 717 ("The government need only prove that [the defendant] knew he possessed the firearms, not that he understood that such possession was illegal.").  The principal's knowledge of his felony status was not at issue.  Id. at 713 ("Smith argues . . . that a jury might find that he had mistakenly believed he could legally possess firearms, notwithstanding the fact that he was a convicted felon.").

- 17 -

section 922(g)).  See generally United States v. Langley, 62 F.3d 602, 608-19 (4th Cir. 1995)(en banc)(Phillips, J., concurring and dissenting) (disagreeing with the majority and concluding that the "knowingly" requirement of 18 U.S.C. § 924(a)(2), applicable to § 922(g)(1), requires "proof that the accused knew at the critical time charged that he 'ha[d] been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.'" (alteration in original) (quoting 18 U.S.C. § 922(g)(1)).

Second--and this is the point on which we rely--as in Encarnación, we reject the notion that the state of mind requirement of section 2 is a chameleon, simply taking on the state of mind requirements of whatever underlying crime is aided and abetted.  See Encarnación, 787 F.3d at 589.  We read the words "punishable as a principal" to refer to the penalties available to one who is guilty of aiding and abetting a crime, not to define by incorporation a reduced scienter requirement for determining guilt in the first instance.  In too many instances, the principal will be in a superior position both to know the facts and to know whether his or her conduct is regulated for the protection of the public welfare.  With the principal's crime here, for example, the felon presumably knows that he was convicted of some crime, and that the conviction has continuing ramifications.  Indeed, given modern rules of criminal procedure, such as guilty plea and

sentencing procedures, James was presumably told that he was convicted of a crime punishable by a year or more in prison. See, e.g., Fed. R. Crim. P. 11(b)(1)(H) (requiring federal courts, before accepting a guilty plea, to inform the defendant and determine that he understands "any maximum possible penalty" of the offense); Mass. R. Crim. P. 12(c)(3)(A)(ii) (same). Conversely, if another person has no idea that the principal has been convicted of a serious crime, there is no reason that other person can be presumed to know that possession of a firearm may be problematic. Staples, in turn, tells us that this country's "long tradition of widespread lawful gun ownership by private individuals" precludes any rejection of the background scienter presumption merely because the defendant knows that a firearm is involved. 511 U.S. at 610.

In any event, the government in this case does not need to rely on Canon's strict liability interpretation. Rather, the government need only defend the district court's "know or had reason to know" formulation. To do so, the government turns to another 1993 opinion, United States v. Xavier, 2 F.3d 1281 (3d Cir. 1993), stating that the government need prove that the aider and abettor "knew or had cause to believe" that the principal had been convicted of a crime punishable by more than a year in prison, id. at 1287. Two other circuits have arrived at the same

conclusion as Xavier without adding to its analysis. United States v. Samuels, 521 F.3d 804, 812 (7th Cir. 2008) ("[T]o aid and abet a felon in possession of a firearm, the defendant must know or have reason to know that the individual is a felon at the time of the aiding and abetting . . . ."); United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) (agreeing with the Third Circuit's "well-reasoned" decision in Xavier). We reject Xavier's formulation of the scienter requirement for three reasons.

First, Xavier and its progeny were not presented with the precise question now before us: whether the government must prove knowledge or whether proof of "reason to know" is sufficient. In Xavier and Gardner,[5] for example, the courts grappled with the choice between a combined "know or reason to know" standard and strict liability. Gardner, 488 F.3d at 714 (noting that the Sixth Circuit had "yet to decide" whether there must be proof that the aider and abettor knew or should have known that the principal was

_____

[5] In Samuels, the defendant did not contest his knowledge of the principal's prior conviction, but rather he claimed there was insufficient evidence proving that he was actually the individual who transferred the firearm to the principal. In its discussion, however, the Seventh Circuit simply stated, without further analysis, that the aider and abettor "must know or have reason to know that the individual is a felon at the time of the aiding and abetting." Samuels, 521 F.3d at 812 (noting that the defendant did "not challenge the sufficiency of the evidence as it relates to [the principal] being a prior convicted felon who possessed a firearm that traveled in interstate commerce," but rather only challenged a witness's "testimony about whether [the witness] saw [the defendant] hand [the principal] the gun").

- 20 -

a convicted felon or whether strict liability was proper); Xavier, 2 F.3d at 1286 (rejecting the notion that a conviction for aiding and abetting a violation of § 922(g)(1) can stand without requiring proof of the aider and abettor's knowledge or reason to know of the principal's status).  It appears that no court has squarely decided the question we now answer,[6] and the "circuit split" referenced by the district court and the parties refers only to a disagreement between whether the government "ha[s] to prove knew or had reason to know or nothing at all in terms of knowledge."

Second, having "reason to know" suggests a negligence standard.  Cf. Restatement (Third) of Torts: Liability for Physical

---

[6] There are two unpublished cases, one from the Fourth Circuit and one from the Eleventh Circuit, finding no plain error in a court's refusal to require that the jury find that the aider and abettor had actual knowledge of the prior conviction.  While these cases are informative, they are not directly on point given the deferential standard of review applied by these two courts. United States v. Cox, 591 F. App'x 181, 185–86 (4th Cir. 2014)(unpublished); United States v. Lesure, 262 F. App'x 135, 141–43 (11th Cir. 2008)(unpublished per curiam).  Both courts concluded that given the lack of controlling precedent on this issue, it was not plain error for the court to deny the defendant's request for a jury instruction requiring the aider and abettor's actual knowledge of the principal's past conviction. Cox, 591 F. App'x at 186 ("In the absence of controlling precedent and in view of the inconsistent holdings of other circuits, we cannot conclude that any error in failing to grant Cox's requested instruction was plain."); Lesure, 262 F. App'x at 142 ("Given the applicable standard of review, it is notable to observe at the outset that '[w]hen neither the Supreme Court nor [we have] resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.'" (alterations in original) (quoting United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.), cert. denied, 552 U.S. 910 (2007)).

and Emotional Harm § 3 cmt. g (2010) (negligence concerns "what the actor 'should have known'").  That formulation therefore materially deviates from the traditional mens rea formulation "that the defendant know the facts that make his conduct illegal." Staples, 511 U.S. at 605.  Or, as we said in Tarr, for a "defendant to be an aider and abettor [she] must know that the activity condemned by the law is actually occurring."  589 F.2d at 59 (quoting United States v. McDaniel, 545 F.2d 642, 644 (9th Cir. 1976)).  Under the "have reason to know" alternative, a jury might well convict one who was merely negligent in failing to know.

Third, we reject Xavier's formulation because it rests on the faulty and unstated assumption that the absence of any express scienter requirement in section 2 or in section 922(g)(1) suggests that scienter is not generally an element of a section 2 offense.  Perhaps because Xavier was decided before X-Citement Video and Staples, the Xavier court entirely overlooked the background scienter presumption that must inform our reading of section 2.  That oversight then led the Xavier court to perceive an anomaly, which we summarize as follows:  (1) 18 U.S.C. § 922(d)(1) directly addresses the sale or disposing of a firearm to a felon, imposing criminal liability on the purveyor if he or she "know[s] or ha[s] reasonable cause to believe" that the recipient "has been convicted in any court of, a crime punishable

by imprisonment for a term exceeding one year"; (2) every sale or disposing of a firearm to a felon can be described as aiding and abetting a felon's possession of the firearm; therefore, (3) "[a]llowing aider and abettor liability under § 922(g)(1), without requiring proof of knowledge or reason to know of the possessor's status, would effectively circumvent the knowledge element in § 922(d)(1)."  Xavier, 2 F.3d at 1286.  In order to prevent such a circumvention, the court read into section 2 a knowledge requirement paralleling the requirement of section 922(d)(1).

In sum, by overlooking the background presumption of scienter that should inform any reading of section 2, the Xavier court perceived a problem that did not exist, and then adopted for aiders and abettors a watered-down scienter requirement applicable when the government chooses to allege that the person violated section 922(d)(1) by selling or "otherwise dispos[ing] of any firearm" to a felon, which the Xavier court did not appear to realize actually reduced the requirement that was already in the statute implicitly.[7]

Notwithstanding Xavier and its progeny, we therefore adhere to our view that, in order to establish criminal liability

_____

[7] Here, the government did not charge Darlene with violating section 922(d)(1).  It instead pursued aiding and abetting liability via section 2 and section 922(g)(1).

- 23 -

under 18 U.S.C. § 2 for aiding and abetting criminal behavior, and subject to several caveats we will next address, the government need prove beyond a reasonable doubt that the putative aider and abettor knew the facts that make the principal's conduct criminal. In this case, that means that the government must prove that Darlene knew that James had previously been convicted of a crime punishable by more than a year in prison. Having so concluded, and before turning to consider the effect of this holding on this appeal, we add several important caveats.

First, the element of the principal's crime at issue in this case--his prior conviction--is an element that is essential to labeling as criminal, even wrongful, the principal's behavior. Were we confronted, instead, with an element of the crime that was required, for example, only to establish federal jurisdiction to punish behavior that was in any event unlawful, we might well reach a different answer. Cf. United States v. Feola, 420 U.S. 671, 694-96 (1975) (one who conspires to assault a person who turns out to be a federal officer may, in the case of an actual assault, be convicted without proof that he knew the federal status of the victim); see also United States v. Gendron, 18 F.3d 955, 958 (1st Cir. 1994) (noting that "courts normally hold that the prosecutor

need not prove the defendant's state of mind in respect to 'jurisdictional facts'").

Second, when the government is required to prove that a defendant knew a fact, the court may give a "willful blindness" instruction, which is warranted if "(1) the defendant claims lack of knowledge; (2) the evidence would support an inference that the defendant consciously engaged in a course of deliberate ignorance; and (3) the proposed instruction, as a whole, could not lead the jury to conclude that an inference of knowledge [is] mandatory." United States v. Gabriele, 63 F.3d 61, 66 (1st Cir. 1995).[8] Evidence sufficient to meet requirement (2) can include evidence that the defendant was confronted with "red flags" but nevertheless said, "I don't want to know what they mean." Id.

Third, if the government does prove what it need not prove--that Darlene knew that the law barred James from possessing a gun--then it need not also prove that she was aware that he had

_____

[8] In fact, the court gave a "willful blindness" instruction on the knowledge required for Count 3 of Darlene's conviction, which involved 21 U.S.C. § 856(a)(1), which prohibits a person from "knowingly" maintaining a place "for the purpose of manufacturing, distributing, or using any controlled substance." Because the statute itself includes the term "knowingly," the court instructed the jury that "[f]or the purposes of Count 3 only, the law allows the government to prove knowledge by proving that Darlene Ford was willfully blind to a fact." It explicitly stated, however, that "[t]his means of proving Ms. Ford's knowledge is applicable only to Count 3 and must not be applied to either Count 1 or Count 6."

- 25 -

been previously convicted of a crime punishable by more than a year in prison. When a person actually knows that the conduct she proceeds to aid and abet is unlawful, she acts with specific intent to aid or abet a crime. Cf. Cheek, 498 U.S. at 199-200 (discussing the requirement, under certain tax laws, that the government prove the defendant's specific intent to violate the law, which requires showing the defendant's knowledge of the legal duty). "[I]f the Government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component" and has shown that the defendant acted willfully. Id. at 202. Thus, if the government proves the defendant's knowledge of the legal duty itself, it need not also prove the lesser degree of culpability that would otherwise need to be shown in the absence of such knowledge. See Model Penal Code § 2.02(5) and explanatory note (stating that § 2.02(5) "makes it unnecessary to state in the definition of an offense that the defendant can be convicted if it is proved that he was more culpable than the definition of the offense requires"). This conclusion is logical, because when a defendant knows her conduct is unlawful, "[t]here is . . . no risk of unfairness [or criminalizing the innocent] because the defendant 'knows from the very outset that his planned course of

conduct is wrongful.'" United States v. Burwell, 690 F.3d 500, 507 (D.C. Cir. 2012) (en banc) (quoting Feola, 420 U.S. at 685).

Fourth, direct proof of knowledge is not required. "[T]he government's proof may lay entirely in circumstantial evidence." United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995)(emphasis in original). Here, for example, viewed in a light favorable to the government, the cumulative force of the circumstantial evidence would have been more than enough to allow a properly instructed jury to find beyond a reasonable doubt that Darlene had the required mens rea. That evidence would have allowed a jury to find that: James and Darlene lived together for decades, during which time James shared with Darlene the details of the family's drug operations both in Massachusetts and Maine (indeed, she was actively involved in the Maine operation at least); James was arrested and thereafter accused and convicted of a serious crime while they lived together in Massachusetts; Darlene lost her house in Massachusetts without any good reason to think that the forfeiture was a product of her son's but not her husband's criminal activity; James was interested in guns, kept and adapted gun parts, and used the guns, yet Darlene alone bought the gun that James used in the video; she was familiar with the background check requirements, which included inquiry concerning prior convictions; and her denials of various of these facts

impeached her own credibility.  All of this is more than enough to support a finding that Darlene had the requisite mens rea to be guilty of aiding and abetting the firearms offense.[9]

### 3.    Harmless Error

Having concluded both that the trial court erred in instructing the jury on the state of mind element of the aiding and abetting offense, and that the evidence, when viewed favorably to the government, would have been sufficient to support a conviction had a proper instruction been given, we turn now to consider the government's argument that the instructional error was harmless.  Whether this argument is correct turns on our answer to the following question: Was the evidence so overwhelming that any rational jury would have been compelled to find beyond a reasonable doubt that Darlene knew (or willfully disregarded) either that James could not legally possess a gun or, at least, that he had been convicted of an offense punishable by more than a year in prison?  See Neder v. United States, 527 U.S. 1, 19 (1999); Baldyga, 233 F.3d at 682 (reviewing for plain error but analyzing harmlessness in the same way as Neder).

We think that the answer is plainly "no."  Darlene testified, point blank, that she did not even know that James had

---

[9] For this reason, we reject out-of-hand Darlene's contention that the evidence was insufficient to support a conviction on the aiding and abetting charge.

- 28 -

been convicted of anything.  Issues of credibility are customarily for the jury.  United States v. Cruz-Kuilan, 75 F.3d 59, 62 (1st Cir. 1996).  Furthermore, the absence of evidence about the prior criminal proceeding cuts against the government, as such evidence presumably would have shown much about James's activities in connection with the prior conviction and sentence that would have shed light on the likelihood that his wife was unaware of the conviction.  Did he spend any time in jail?  How often did he go to court?  What exactly was the sentence?  What were the terms of any probation?  All of these unanswered questions, cumulatively, might well have caused a rational jury to have some reasonable doubt about the government's case on this element.  Indeed, the government itself concedes that the evidence on Darlene's knowledge presented a "credibility choice [that] was the jury's to make."  We agree.  The error, therefore, was not harmless.

**B.   Substantive Reasonableness of Darlene's Sentence**

We now turn to Darlene's challenge to the substantive reasonableness of her sentence.

At sentencing, the district court found a base offense level of 22 and that three 2-level enhancements applied, for a total offense level of 28: (1) a 2-level enhancement under U.S.S.G. § 2D1.1(b)(1) (possession of a dangerous weapon); (2) a 2-level enhancement because Darlene was found to have maintained a

residence for the purposes of manufacturing a controlled substance; and (3) a 2-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The district court found that a Guidelines range of 78 to 97 months applied and sentenced Darlene to concurrent prison terms of 78 months for each of the three counts on which she was convicted. Our decision to vacate the conviction on one of those counts leaves untouched the district court's sentence of 78 months on each of the other two counts, to run concurrently. Darlene challenges that remaining part of her sentence as substantively unreasonable because the district court said, at the sentencing hearing, that

> [I]f you had been smarter about this, in my view, and you had either not testified falsely or alternatively looked at yourself hard in the mirror and said, I am going to follow my sons and not my husband, I won't go to trial on this, you would have been looking at a much lower guideline range.

"We employ the abuse of discretion standard" in considering challenges to the substantive reasonableness of a sentence. United States v. Ayala-Vazquez, 751 F.3d 1, 29 (1st Cir. 2014).

Darlene argues that the district court's remarks constituted an improper and indefensible rationale for selecting the bottom of the Guidelines range sentence, rather than an even lower sentence like those her sons received when they pled guilty.

As support for this argument, Darlene says that she could not have avoided a trial because the government never offered her a plea deal.  Therefore, reasons Darlene, she was "punish[ed] . . . for going to trial, when, in fact, she had no other option."

Darlene plainly had another option:  she could have entered a straight plea of guilty under Federal Rule of Criminal Procedure 11(a).  See also United States v. Pulido, 566 F.3d 52, 55 (1st Cir. 2009) (referring to a "straight up plea" as one in which the defendant pleads guilty on his own initiative rather than "pleading with a plea agreement with the government").  Had she done so, she might have had a shot at a reduction in her Guidelines sentencing range for acceptance of responsibility, U.S.S.G. § 3E1.1, and she would have had no occasion to appall the trial judge with testimony that he found to contain repeated lying, which resulted in an enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  Given that she did not pursue that available option, she has no basis to complain that she did not benefit from the court's discretion to incarcerate for shorter periods those who do accept responsibility and demonstrate truthfulness.  See, e.g., United States v. García-Pagán, 804 F.3d 121, 125 (1st Cir. 2015), petition for cert. filed, 15-8711 (U.S. filed Mar. 18, 2016); United States v. Alejandro-Montañez, 778 F.3d 352, 360-61 (1st Cir. 2015); United States v. Castro-Caicedo, 775 F.3d 93, 103

- 31 -

(1st Cir. 2014); United States v. Brum, 948 F.2d 817, 819–20 (1st Cir. 1991). Accordingly, the district court's observation that Darlene was unwise to have foregone any possibility of such dispensation was a fair comment, and certainly did not fall within haling distance of an abuse of discretion that would sustain Darlene's substantive challenge to her sentence. See Ayala-Vazquez, 751 F.3d at 29.

## III. Conclusion

For the reasons set forth above, we vacate Darlene's conviction on the aiding and abetting count (Count 6), and we affirm her sentence for the remaining counts of conviction (Counts 1 and 3). The case is remanded to the district court for further proceedings in light of this opinion.